DETROIT & BIRMINGHAM PLANK-ROAD CO. *v.* OAKLAND RAILWAY CO.

1. STREET RAILWAYS—RIGHT OF WAY—PLANK ROADS—ENCROACHMENTS—CONSTRUCTION OF CONTRACT.

A plank-road company granted an electric-railway company permission to build a second track between the roadway and the fence, in such a manner as not to encroach upon the roadbed; and if, at any place, it should be necessary to construct the track so near the roadway as to encroach upon it, then the railway company should extend the roadbed upon the opposite side. *Held*, that the purpose of the contract was to enable the railway company to double-track its road, and that necessary encroachment upon the traveled portion of the highway was contemplated.

2. SAME—INJUNCTION—REMEDY AT LAW.

A street-railway company which has obtained from a plank-road company permission to lay its track in the highway in such a manner as not unnecessarily to encroach upon the roadbed will not be enjoined, at the instance of the plank-road company, from making an alleged unnecessary encroachment, as there is an adequate remedy at law.

Appeal from Wayne; Frazer, J. Submitted October 14, 1902. (Docket No. 24.) Decided December 2, 1902.

Bill by the Detroit & Birmingham Plank-Road Company against the Oakland Railway Company to enjoin the laying of certain track. From a decree dismissing the bill, complainant appeals. Affirmed.

*Frank B. Leland* and *Ralph L. Aldrich*, for complainant.

*Brennan, Donnelly & Van De Mark* and *Fred A. Baker*, for defendant.

Moore, J. This is an injunction bill. After a full hearing it was dismissed. The complainant has brought the case here by appeal.

The appellant is a plank-road company, owning and operating a plank or gravel road extending from the city limits of the city of Detroit to the village of Birmingham, along the continuation of the street in the city of Detroit known as "Woodward Avenue." Prior to the 1st of March, 1899, the parties entered into a contract by which complainant granted to defendant certain rights, which need not be mentioned in detail. After this contract was made, defendant constructed and operated a single-track railway from Detroit to Pontiac.

March 21, 1899, another contract was made between them, the material parts of which, so far as they relate to this controversy, read as follows:

"*That Whereas*, second party now owns and is operating a single-track electric or street railway between a point about 246 feet north of the Kanady road, so called, on the line of Woodward avenue, extended, and a point in Birmingham, which is the northerly terminus of first party's right of way; and

"*Whereas*, second party desires to construct a second electric or street railway track between a point about 246 feet north of the Kanady road, so called, on the line of Woodward avenue, extended, and a point in the village of Birmingham, which is the northerly terminus of the first party's right of way, upon a private right of way which it has purchased and is purchasing adjacent to the highway controlled by the first party, and through the village of Birmingham, and perhaps at one or two other points, to encroach upon the right of way of said first party; and
* * *:

"*Now, therefore*, in consideration of the payment in cash hereinafter mentioned by second party to the first party to this instrument, said first party hereby agrees to

permit as aforesaid, and make no objection or not to obstruct the second party, or its assigns, from constructing, maintaining, and operating said second electric-railway track; said second electric-railway track, where it is built upon the highway, except in the village of Birmingham, to be constructed between the roadbed of said highway and the fence in such a manner as in no way to encroach upon said roadway, or hinder the public travel thereon, nor to obstruct or damage any public or private approach to said toll road. It being mutually agreed that if, at any place, it shall be necessary to construct said second electric-railway track so near the roadbed as to cause any damage or encroachment upon said roadbed, second party shall, at its expense, but under the supervision and direction of first party's foreman, whose time shall be paid for by the second party, extend the roadbed as far upon the opposite side of the roadway as it encroaches upon it with its track or grading; such newly-built portion of the highway to be constructed in a substantial and satisfactory manner, and left in as good condition as that part of the roadway which is appropriated. And second party further agrees that, in constructing said second electric street-railway track, it will at all times have regard for the safety and convenience of teams passing along said highway, and at all places along said highway will leave ample and sufficient room for the free passing of each other by teams drawing loaded vehicles; it being the undertaking of second party in this regard that it will not in any way interfere with the safety or convenience of the traveling public which have occasion to use the toll road owned and controlled by first party.

"It is further mutually agreed that, contemporaneously with the paving of any portion of the highway now maintained as a gravel road by the party of the first part, the two tracks, or either of them, of the party of the second part, may be moved to the center of the street, and there laid and constructed in accordance with the usual methods of laying track in paved streets. * * *

"If at any time said electric road shall cease to be operated by electric power, or by any other power permitted upon the streets of the city of Detroit, this agreement shall be null and void."

Some time prior to the commencement of this suit, the defendant had conveyed its single track and its rights

through the village of Highland Park to the Detroit Citizens' Street-Railway Company. The village decided to pave this street, from Detroit through the village to its northern boundary, known as the "Six-Mile Road." Double tracks were laid through the center of this street to the Six-Mile road, and it became necessary to connect these tracks with the single track running north from the Six-Mile road, which track was laid on the westerly side of the highway, and west of the traveled portion thereof. In November, 1899, the defendant entered upon the work of making this connection. Complainant claimed it proposed to do it in an improper manner, and filed this bill, asking for an injunction. The application for a preliminary injunction was refused. At about this time the solicitors for the respective parties had a conference with a view of reaching an amicable adjustment. A map or plat had been prepared by a civil engineer at the request of complainant. This plat was indorsed, "Plat accepted," and signed by the solicitors for the respective parties, both of whom say an agreement of settlement was then reached. The defendant was to pay $42 for the expense of making the plat and other expenses which had then accrued. A day or two thereafter a check was sent for the amount. Later it was returned by complainant, it contending that the connection was not made according to the lines drawn upon the plat, while it was the claim of defendant that the connection was made according to the terms of the plat. Afterwards a hearing was had, and proofs taken. The circuit judge was of the opinion there had been no violation of the terms of the contract, and, if there had been, that complainant had an adequate remedy at law, and dismissed the bill of complaint.

The controversy arises over the making of the connection between the double track at the Six-Mile road and the single track north of that point. It is the claim of complainant that, before the double tracks were extended to the north boundary of the village, the connection was made within 171 feet, and that the new connection could

have been made within the same distance, but that defendant did not do so, but encroached unnecessarily upon the traveled portion of the road, by taking 440 feet in which to make this connection, and that, when the agreement was made between the attorneys, the plat showed the connection was to be made within 171 feet. It is the claim of defendant that the only purpose of making the second agreement was to enable it to double-track its road; that, when the bill was filed, it had done so from Birmingham to a point less than a mile north of the Six-Mile road, and that it had the rails distributed between these points, and intended, as soon as it could, to complete the double track, and that the plat presented when the agreement between the attorneys was reached, showed, in red ink, how the connection would be made when the double track was completed, and that the connection was made, having the plat, and the fact that the double track was to be completed to the Six-Mile road, in mind; and that defendant has done nothing not justified by the contract.

Without going into detail, we are satisfied that the purpose of the contract was to enable defendant to double-track its road. To do this, it was contemplated it might be necessary to encroach upon the traveled portion of the highway. We are not satisfied from the testimony that defendant has unnecessarily encroached upon the traveled portion of the highway, but, if it has done so, the complainant has an adequate remedy at law. We decline to express any opinion as to whether the defendant ought to build the double track west of the existing track, for the reason that it is not necessary to do so, and for the further reason that all the parties in interest are not before us.

The decree is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred.